UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RELIABLE AMBULANCE SERVICE OF LAREDO, INC., § § § Plaintiff, § VS. § KATHLEEN SEBELIUS, § § § Defendant. § | CIVIL ACTION NO. 2:12-CV-372 |

## ORDER

Before the Court is Reliable Ambulance Service, Inc.'s (Reliable's) "Motion for Summary Judgment on the Pleadings and the Record" (D.E. 10). At issue is whether Reliable satisfied the Medicare requirements for reimbursement for non-emergency ambulance services to transport its patient (the Medicare beneficiary) to kidney dialysis treatments. The Medicare Appeals Council (Secretary)—the final level of administrative review on behalf of the Secretary of Health and Human Services—issued its opinion finding that the Medicare requirements were not satisfied. For the reasons set out below, the Motion is GRANTED and the Secretary's decision is REVERSED.

## JURISDICTION

There is no dispute that Reliable has exhausted its administrative remedies, culminating in the Secretary's decision that was issued on October 2, 2012 (D.E. 10-2, pp. 4-8). This Court's jurisdiction is prescribed by 42 U.S.C. § 1395ff(b) and 42 U.S.C. § 405(g), requiring a complaint filed within sixty days of receipt of the decision, which receipt is presumed to take place within five days of the date of the letter transmitting the

1 / 8

decision. The Complaint (D.E. 1) was filed on December 5, 2012 and is thus timely. This Court has jurisdiction to proceed and affirm, modify, or reverse, with or without remand as appropriate. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

According to the Administrative Procedure Act (APA) and its judicial review provisions, the Secretary's decision is entitled to a highly deferential standard of review. APA, 5 U.S.C. §§ 701 *et seq.*; *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904 (5th Cir. 1983). The administrative findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). The Court does not re-weigh the evidence or substitute its judgment for that of the agency, but determines whether the agency decision was based on relevant factors and substantial evidence, and is legally correct. *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 774 (5th Cir. 2010); *Delta Foundation, Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002); *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994).

A reversal on evidentiary grounds is only appropriate if no credible evidentiary choices or medical findings support the decision. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). Purely legal questions are reviewed *de novo*, giving deference to the agency's interpretation of the statute and regulations that it is charged with administering. *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004). Still, the Medicare Act is to be liberally construed in favor of beneficiaries and coverage decisions should be based upon a

common sense, non-technical consideration of the patient's condition as a whole. *Morris, supra*.

## DISCUSSION

This case is not factually complex. The beneficiary's doctor signed two identical Physician Certification Statements covering the dates of service at issue, stating:

> Patient's medical information making it a medical necessity for non-emergency ambulance transportation is due to Patient being unable to get up from bed/sit/stand without assistance due to the following:
>
> [Patient with left Below Knee Amputation], Poor Motor Functions, Poor Upper Trunk Control, Stiffness to all Extremities, Peripheral Vascular Disease, Diabetes Mellitus (non-insulin dependent), Hypertension, Coronary Artery Disease (status post coronary revascularisation), Anemia. [Patient] on constant [Oxygen] @ 4 LPM due to Chronic Obstructive Pulmonary Disease, End Stage Renal Disease, Dialysis Status.  Other Medical Hx:  Cholecystectomy. [Patient] to be transported from/to his Residence to/from his Hemodialysis Treatments.

D.E. 10-3, pp. 49-50.  Reliable's records show that, on each occasion, the technicians loaded the beneficiary onto a stretcher using a two-man drawsheet method, confirmed the beneficiary's poor motor functions, poor upper trunk control, stiff extremities, and added that his right toes had been amputated.  *E.g*., D.E. 10-3, pp. 27-48.

In the telephonic hearing conducted for the Secretary's *de novo* review, Fernando Canseco, the only witness, testified that the beneficiary could not control his own oxygen:

> He had—his debilitations wouldn't—did not allow him to be able to move a dial—his debilitations did not allow him to be able to move himself to the oxygen tank.  Because of the amputations on—he's a bilateral amputee—and the fact that he was unable to control his upper trunk, as well as poor motor functions to all his extremities.

D.E. 10-8, p. 32-33.  Mr. Canseco further testified that the beneficiary was transported from his bed at home to Geri-Chairs (a form of recliner that prevents a beneficiary from sitting forward) at the dialysis center and back by use of the drawsheet method and stretcher.  D.E. 10-8, p. 31-32.

There is no contrary evidence that the Secretary had to weigh.  The only evidence shows that the beneficiary was confined to bed, could not control the continuous administration of oxygen that was necessary to his treatment, and that ambulance transport was considered medically necessary by his physician.  On this record, the Secretary denied Medicare coverage and reimbursement, reciting that Reliable had not established that other methods of transport, particularly a stretcher van, were contraindicated.  D.E. 10-2, pp. 6-7.

According to Medicare regulations, "Nonemergency transportation by ambulance is appropriate if . . . :  the beneficiary is bed-confined, and it is documented that the ***beneficiary's condition is such that other methods of transportation are contraindicated*** . . . ."  42 C.F.R. § 410.40(d)(1) (emphasis added).  The question presented is whether this record shows that the beneficiary's condition is such that other methods of transportation are contraindicated.  In the statute, the definition of covered "medical and other health services" includes "ambulance service where the use of other

methods of transportation is contraindicated by the individual's condition . . . ." 42 U.S.C. § 1395x(s)(7). This issue does not necessarily require a specific piece of paper saying that other modes of transport are contraindicated—only that the beneficiary's "condition" so demonstrates. There appears to be no question as to this beneficiary's condition.

The Secretary's decision suggests that Reliable needed more than the physician's certificate and the technician's observations regarding the beneficiary's condition—that it needed more "medical evidence" to establish that Medicare coverage requirements were met, citing *Maximum Comfort v. Secretary of Health & Human Services*, 512 F.3d 1081, 1087-88 (9th Cir. 2007). The *Maximum Comfort* case, along with two others cited therein, involved Medicare audits that revealed a number of motorized wheelchairs being provided to beneficiaries who did not meet the statutory requirements for Medicare coverage of the cost of the equipment (despite physician certifications conclusively representing that the requirements were met). *See MacKenzie Medical Supply, Inc. v. Leavitt*, 506 F.3d 341 (4th Cir. 2007); *Gulfcoast Medical Supply, Inc. v. Secretary, Health & Human Services*, 468 F.3d 1347 (11th Cir. 2006).

The legal challenge in each of those cases was based on the argument that the physician's certificates were conclusive and prohibited the Secretary's request for additional medical information to confirm the beneficiary's medical condition and guard against fraud. The courts in each of the three cases held that the Medicare statute did not make a physician's certificate conclusive evidence of a beneficiary's right to

reimbursement for durable medical equipment. Instead, the Secretary was demanding, and was entitled to, additional evidence of the beneficiary's condition.

The holding in the *Maximum Comfort* trio of cases does not determine this case. Here, the Secretary is not faced with a blanket prohibition on seeking documentation of the beneficiary's condition. That condition is firmly established. The Secretary, in her Response, has confirmed the very narrow question posed in this case: "The record clearly established that the beneficiary needed assistance for trips to and from dialysis; however, the record did not establish that such assistance had to be provided by ambulance personnel." D.E. 13, p. 2. Thus the question is not whether the Secretary had the right to demand additional proof of the beneficiary's medical condition, but whether the proof of that condition met the statutory requirements for non-emergent transport by ambulance.

Given the Secretary's acceptance of the evidence of the beneficiary's condition, there is no question that he required the continuous administration of oxygen prescribed by his physician and reflected in the physician's certification. The only evidence on the issue showed that the beneficiary, himself, did not have the capacity to handle the oxygen tank or manipulate its dials in order to maintain the necessary blood saturation levels and that the ambulance personnel were equipped to, and did in fact, handle the monitoring of his levels and the administration of the oxygen for the duration of the trips.

The questioning at the final administrative level pertained to the short duration of those trips. D.E. 10-8, pp. 30-31. It appears that the Secretary was skeptical of the beneficiary's need for medical technicians to administer the oxygen when the transport

covered only a few miles.  Because the physician's certification states that the beneficiary was on "constant oxygen," there is no evidence from which the Secretary may conclude that a brief interruption in the administration of the oxygen would be harmless.  The Court notes that the Secretary's decision does not address the continuous oxygen treatment when it claims that the record fails to show that alternative modes of transportation were contraindicated.  Because the undisputed evidence accepted by the Secretary reflects the beneficiary's diagnoses and relevant treatment parameters, and because nothing in the record reflects that a stretcher van could accommodate the beneficiary's oxygen needs, the Court finds that the Secretary did not have substantial evidence to support her denial of benefits.

This conclusion is further compelled by the required liberal construction of the Medicare Act with respect to coverage issues and by the statute's reference to the beneficiary's condition contraindicating the use of alternative transportation methods.  Therefore, the case should be reversed.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Motion for Summary Judgment and REVERSES the Secretary's decision.  The Court ORDERS Plaintiff to file its Motion for Judgment on or before August 12, 2013, with evidence supporting its claim for reimbursement, reasonable and necessary attorney's fees, and any other damages it claims.  Defendant is ORDERED to file her Response to said Motion for Judgment on or before the 14th day after the Motion is filed.  The Court terminates the oral argument setting on July 26, 2013.

ORDERED this 18th day of July, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE